UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Carolyn Fish on behalf of her minor child A.F., <br><br> Plaintiff, <br><br> v. <br><br> MILLBROOK CENTRAL SCHOOL DISTRICT, MILLBROOK CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION, Superintendent, LAURA MITCHELL, Principal, ERIC SEIPP, and Teacher, SAMANTHA HOLSBORG, each in their official and individual capacities, <br><br> Defendants. | Case No.  **7:23-cv-01429-VB** <br><br><br> **FIRST AMENDED COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

Carolyn Fish on behalf of her minor child A.F., by her attorneys, HACH ROSE SCHIRRIPA & CHEVERIE, LLP ("HRSC"), respectfully alleges:

<u>**INTRODUCTION**</u>

1.      Since March 23, 2022, through and to present, Plaintiff's minor child A.F. ("A.F.") has been harassed and bullied by other students because of her protected status as a homosexual. A.F.'s continued harassment and bullying by other students was in direct contravention of Millbrook Central School District's ("MCSD") policy and occurred with deliberate indifference to her constitutional rights.

2.      A.F.'s unlawful treatment occurred in front of, or was reported to, multiple adults in positions of authority, who idly stood by and allowed students to sexually harass and bully A.F. In particular, Defendants LAURA MITCHELL ("Mitchell"), ERIC SEIPP ("Seipp"), and SAMANTHA HOLSBORG ("Holsborg") were made aware of A.F.'s treatment and failed to

intervene to stop the onslaught of harassment and bullying and failed to plan for A.F.'s safety.  In fact, Defendants actively retaliated against A.F instead of protecting her.

3. As a result of Defendants' deliberate indifference to A.F.'s rights, A.F was injured and denied her clearly established right to attend public school and receive equal access to education. Further, A.F suffered damages, including without limitation emotional trauma, mental anguish, suffering, impairment of reputation, and personal humiliation.

4. Plaintiff sues to vindicate her child's rights pursuant to 42 U.S.C. § 1983 and 20 U.S.C. § 1681 and seeks compensatory damages, punitive damages, and costs.

## JURISIDICTION

5. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they are related to the claims in this action within the Court's original jurisdiction such that they form part of the same case or controversy under Article III of the United States Constitution.

6. Venue is properly laid in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 because, *inter alia*, Defendants are situated in this district and are subject to this Court's personal jurisdiction, and the unlawful conduct complained of herein occurred within this district.

## PARTIES

7. A.F. is a resident of Dutchess County in the State of New York.  A.F. was born in 2006 and is a minor.  At all times relevant to this Complaint, A.F. resided in the town of Pleasant Valley within the geographical boundaries of the Defendants' school district zone. A.F. attended

Millbrook Central Schools from 2013 through present. From 2019 through present, A.F. has attended Millbrook High School in the MILLBROOK CENTRAL SCHOOL DISTRICT.

8.      Defendant MCSD was and is a municipal corporation and local educational agency which maintains its principal place of business at 43 Alden Pl, Millbrook, NY 12545 in Dutchess County.  MCSD and each of its component schools are recipients of federal financial assistance as defined in 20 U.S.C. § 1981(c).  MCSD is a "person" within the meaning of 42 U.S.C. § 1983.

9.      At all times relevant to this Complaint, MCSD owned, operated, controlled, administered, and maintained Millbrook High School, which is located at 70 Church Street, Millbrook, NY 12545 in Dutchess County.

10.     At all times relevant to this Complaint, Defendant MILLBROOK CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION ("MCSD Board of Education") was and is a public benefit corporation, duly organized by virtue of the laws of the State of New York, maintaining its principal place of business at 43 Alden Pl, Millbrook, NY 12545 in Dutchess County.  MCSD Board of Education is a "person" within the meaning of 42 U.S.C. § 1983.

11.     Pursuant to the New York Education Law § 2503, MCSD Board of Education is charged with, *inter alia*: "[p]rescrib[ing] such regulations and by-laws as may be necessary to make effectual the provisions of this chapter and for the conduct of the proceedings of said board and the transaction of its business affairs, for the general management, operation, control, maintenance and discipline of the schools, and of all other educational, social or recreational activities and other interests under its charge or direction." In this capacity, the MCSD Board of Education bears a fiduciary responsibility to the MCSD and is required to ensure that school policies comply with all relevant laws and regulations, and that these policies are implemented in schools.

12.     Defendant MCSD Board of Education "shall have power, and it shall be its duty . .

. [t]o establishes such rules and regulations concerning the order and discipline of the schools . . . as [it] may deem necessary to secure the best educational results … [and is required to] provide adequate training to its employees with respect to discrimination, bullying, or harassment based on sexual orientation or sex." N.Y. Educ. Law § 1709.

13.     Charged with final decision-making authority with respect to discipline and order in its school, as well as training its staff, managing and operating its schools, and training its students to be educated in the warning signs of harassment and abuse, MCSD Board of Education is a policy maker with respect to all misconduct alleged herein.

14.     At all times relevant to this Complaint, Defendant Laura Mitchell ("Mitchell") was Superintendent of MCSD.  At all times relevant to this Complaint, Defendant Mitchell was a policymaker for MCSD and its schools.

15.     At all times relevant to this Complaint, Defendant Seipp was Principal of MCSD's Millbrook High School and continues to serve MCSD in that capacity.

16.     At all times relevant to this Complaint, Defendant Holsborg was an English Teacher at Defendant MCSD's Millbrook High School and continues to serve MCSD but is now "Supervisor of Student Services."

17.     All the Defendants to this action were state actors with respect to the misconduct alleged herein.

## STATEMENT OF FACTS

18.     A.F. is a minor student, who attends Millbrook High School. A.F. identifies as homosexual.

19.     On or around September 5, 2021, MCSD opened its doors for the 2021-2022 school year. On or around that date, A.F. started her sophomore year of high school at Millbrook High

School.

**A.  *MCSD's Codes of Conduct***

20.    MCSD's schools operate under a District Code of Conduct (the "Code of Conduct"). At all times relevant to this Complaint, Millbrook High School students, faculty and staff were bound to this Code.

21.    MCSD provides its Code of Conduct to high school students annually.

22.    MCSD's Code of Conduct states that "[t]he Board of Education is committed to providing a safe and orderly school environment where students may receive, and district personnel may deliver, quality educational services without disruption or interference. Responsible behavior by students, teachers, other district personnel, parents and other visitors is essential to achieving this goal."

23.    At all times relevant to this Complaint, MCSD's Code of Conduct defined "sexual orientation" as "actual or perceived heterosexuality, homosexuality or bisexuality."

24.    At all times relevant to this Complaint, MCSD's Code of Conduct defined "harassment" and "bullying" in relevant part as "the creation of a hostile environment by conduct or by threats, intimidation or abuse (verbal or non-verbal) … that (a) has or would have the effect of unreasonably and substantially interfering with a student's education performance, opportunities or benefits, or mental, emotional or physical well-being; (b) reasonably causes or would reasonably be expected to cause physical injury or emotional harm to fear for his or her physical safety; (c) reasonably causes or would reasonably be expected to cause physical injury or emotional harm to a student."

25.    The New York State Dignity for All Students Act ("DASA") prohibits (1) harassment by employees or students on school property or at school functions and (2)

discrimination against a student based on his/her actual or perceived race, color, weight, national origin, ethnic group, religion, religious practice, disability, sexual orientation, gender or sex by school employees or students.[1]

26.     Accordingly, MCSD's Code of Conduct, specifically Section 5300.80, states, "[t]he district condemns and prohibits all forms of discrimination and harassment of students regardless of actual or perceived … sexual orientation … by school employees or students on school property or at school events and activities that take place on or off school property."  The policy further states, "[t]o that end, the administrators, faculty, staff, and students will participate in activities designed to support a school climate of caring and respect and to proactively prevent discrimination, harassment, and bullying, including cyberbullying."  Boldly, the policy mandates that "[a]ll students have the responsibility to treat each other with caring and respect."

27.     MCSD's Code of Conduct also contains a policy prohibiting sexual harassment.  The policy condemns and strictly prohibits all forms of sexual harassment on school grounds, school buses and at school sponsored activities.

### B.  *A.F. is Bullied and Harassed Based on Her Sexual Orientation in Contravention of MCSD's Code of Conduct*

28.     A.F. first met her bully another student named Jane Doe (hereinafter "Doe").[2]

29.     Doe is a minor student MCSD.

30.     A.F. has identified Doe in repots to the Defendants, in pre-suit filings and hearings and to Defendants' independent investigators.

---

[1]  DASA amended New York State Education Law by expanding tolerance and forcing School Districts and Boards of Education to revise language in their student codes of conduct.

[2] Plaintiff knows Jane Doe's name and can identify her and will identify her throughout this litigation. However, since Doe is a minor, Plaintiff is using the pseudonym to protect Doe's identity for the purpose of this Complaint.

31.    Upon information and belief, the Individual Defendants are aware of Doe's legal name and identity.

32.    A.F. met Doe through being enrolled in the MCSD.

33.    As early as 2016, Doe began teasing and physically battering A.F. regularly at school.

34.    A.F.'s mother repeatedly made complaints to MCSD agents about the issues with Doe and how they were impacting A.F. and her ability to learn.  Despite A.F.'s mother's reporting of this behavior, Doe was never punished.

35.    In 2017, Doe's targeted harassment had spread to Doe's use of the internet to bully A.F. on social media platforms. Doe began sending messages to A.F. which instructed her to harm herself and contained explicit comments about A.F.'s body.  Again, complaints were made to the teachers and the principal, and nothing was done by the school officials.

36.    Prior to starting high school, A.F. disclosed to close friends and family in confidence that she identified as a homosexual.

37.    Upon information and belief, A.F.'s friend disclosed A.F.'s sexual orientation to Doe.

38.    After Doe learned of A.F.'s sexual orientation, she began to target her for abusive treatment.

39.    Doe obtained A.F.'s cell phone number and tormented her with the same types of comments via text and phone calls. A.F. blocked Doe's number.

40.    Doe began to threaten A.F. with disclosing her sexual orientation to the entire school.

41.    At the time A.F. was not prepared to "come out" and announce her sexual orientation

except within her close circle where she felt safe. However, A.F. did disclose her sexual orientation to her classmates to control her personal narrative after Doe began taunting her with homophobic slurs and comments.

42.     Doe escalated her bullying of A.F. by calling her a "faggot" and shout bible quotes during homophobic rages at A.F.

43.     In June 2020, the bullying worsened as the students went back to in-person learning. The same student continued to bully and yell homophobic slurs at A.F.

44.     In or around October 2021, Doe physically attacked A.F. For example, A.F. was smashed into lockers, had her lunchbox stolen, and had various items thrown at her by the same student. Upon information and belief, adults at MCSD were aware of this treatment and failed to intervene.

45.     As the bullying progressed, A.F.'s mother made numerous complaints and spoke to Defendants about the bullying issues.

46.     In September 2021, A.F. was assigned to Defendant Holsborg's English class. Doe was assigned to sit very close to A.F. in class. During class, Doe would continue her pattern of calling A.F. names and attempting to intimidate A.F.

47.     A.F.'s mother reported these incidents to Defendant Holsborg – who was aware of the long history of Doe's behavior toward A.F.; as such, A.F.'s mother repeatedly attempted to have A.F.'s seat moved away from Doe multiple times.

48.     Instead, Defendant Holsborg advised A.F.'s mother that Doe is a "troubled child with a difficult home life." No action was taken to stop the harassment and bullying of A.F.

49.     On or around January 2022, A.F.'s mother made the fourth or fifth request to change A.F.'s seat in the English class. However, A.F.'s seat remained unchanged, and continued to suffer

from the bullying and harassment.

50.     On or around February 2022, A.F.'s mother spoke with the school guidance counselor and school psychologist because the bullying was having on A.F.'s wellbeing and ability to perform in school. Yet once again, no action was taken to intervene or stop the continued harassment A.F. was experiencing.

51.     On or around March 2022, the student continued to harass A.F. physically and verbally. Once again, the student taunted A.F. and called her a "faggot." As this was occurring, there were adults just a few feet away who witnessed this behavior. Yet again, MCSD took no action to intervene and stop this harassment, nor was it reported to anyone. It is indisputable that the harassment and bullying intensified when the student found out of A.F.'s sexual orientation.

52.     On or around March 23, 2022, while A.F. was answering a question in her English class, the same student yelled at A.F. to "go kill yourself, Faggot" in front of the entire class and Defendant Holsborg.

53.     As this was occurring, the teacher - Defendant Holsborg –who was just a few feet away and clearly heard this derogatory comment – took no action to intervene and stop this harassment. In fact, Holsborg stood idly by and tacitly approved the harassment of A.F.

54.     After this incident Defendant Holsborg took A.F. outside in the hallway and asked A.F. if she wanted to report Doe's behavior. A.F. replied in the affirmative and Holsborg attempted to discourage her from reporting this incident. In fact, Holsborg – who had an obligation to report Doe's behavior – took no action to report Doe for violating MCSD's code of conduct.

55.     On or around March 23, 2022, A.F.'s mother filed a report with the New York State Police. A.F.'s mother also filed a DASA report with Defendant MCSD.

56.     The following day, on or around March 24, 2022, Defendant Seipp called A.F.'s

mother, upset that she filed a report with the police and for involving Defendant Mitchell.

57.     On or around March 24, 2022, A.F.'s parents met with the school Principal, Defendant Seipp. A.F.'s parents told Defendant Seipp that they wanted to meet with the Doe's parents and Doe. Defendant Seipp originally told A.F.'s parents that this request would be possible; however, that meeting never occurred.  Indeed, upon information and belief, Doe's parents were never contacted about her treatment of A.F.

58.     On or around March 24, 2022, rather than punish Doe, Defendant Seipp advised A.F.'s mother that A.F.'s English class moving forward will take place in the library, by herself, with a worksheet.

59.     Upon A.F.'s mother's protest to Defendant Seipp's "solution," Defendant Seipp advised A.F.'s mother that Doe had "rights," and she did not have to be moved.

60.      Upon information and belief, no disciplinary proceedings were commenced, nor has any adverse action been taken against the student bullying A.F.

61.     On or around March 25, 2022, Doe continued to relentlessly scream homophobic slurs at A.F. such as "faggot." Again, there were adults just a few feet away, who witnessed this behavior.  Once again, no adult took any action to intervene and stop this harassment, nor were these incidents reported to anyone. Instead, the adults watched as other children laughed at A.F.'s expense and tacitly approved the homophobic behavior of other students.

62.     On or around March 25, 2022, there was an assembly at the school on anti-bullying and suicide prevention. Defendant Seipp told A.F. that she should not attend the assembly so she would "not get any ideas." However, A.F. proceeded to enter the assembly and the student Doe stared at A.F. the entire time in a further attempt to intimidate her. Doe was sitting several rows in front of A.F. and repeatedly turned around to stare at her and to intimidate A.F. Unsurprisingly, no

disciplinary action was taken against the student.

63.     On March 28, 2022, through and to March 30, 2022, Defendant Seipp advised A.F.'s mother that she was not allowed to file a DASA report on her own, as only he could file such a repot. Contrarily, A.F.'s mother ascertained that she could in fact file a DASA report, and Defendant Seipp told her that it "did not matter because he was the DASA coordinator."

64.     Upon information and belief, no DASA investigation was commenced. A.F. was not provided with a report of any such investigation.

65.     On or around March 30, 2022, A.F.'s history teacher made a comment to her regarding her frowns and sad appearance as of late at school. During a separate interaction, A.F.'s science teacher emailed her asking if there was something going on at school because of her sudden change in demeanor. The repetitious bullying and other unsolicited comments about A.F. created extreme discomfort and fear of physical violence for A.F. while on school grounds. Despite these teachers concerns, no action was taken with respect to the bullying and harassment A.F. continued to experience.

66.     On or around March 31, 2022, while A.F. was in her health class, Doe walked in and stood in front of her and stared at A.F., refusing to leave. Doe was not assigned to that class and the sole purpose of her being there was to intimidate A.F. On April 6, 2022, the same occurrence took place, and no school official took any proper action to protect A.F.

67.     On or about April 19, 2022, A.F. was called to the school psychologist's office, where she was told that she should not be so "dramatic," and that she is emotionally strong. A.F. was further advised by the psychologist that she should be understanding of why Doe is the way she is. The school psychologist excused the horrific bullying and threats and made no notable effort to help or protect A.F. As a result, A.F. continued to suffer from anxiety and feared further harm to

her person and/or property while at school. This insurmountable bullying and harassment have impacted A.F.'s ability to perform her functions as a student.

68.     On or about May 5, 2022, A.F. went on a school fieldtrip to the Museum of Natural History. A.F.'s mother was assured by the school that A.F. would be safe and separated Doe who continuously harasses her.

69.     Upon arrival at the museum, Doe followed A.F. the entire time, threw various items at her, and called her "fag" and "faggot." At this time, not one adult chaperone on the trip intervened or helped alleviate the harassment despite the chaperones' awareness of A.F.'s treatment. As a result, A.F. suffered the entire field trip and did not feel safe as she could be harmed by the student.

70.     A.F., and her mother, began receiving death threats at home. The caller stated that he or she would "kill that faggot" and "kill" A.F.'s mother's "faggot daughter."

71.     A.F.'s mother contacted the police and the Defendants. A.F. then requested an accommodation of home instruction while the criminal investigation was pending.

72.     As a result, A.F. completed her final month of her sophomore year at home.

73.     In consequence, A.F. had to miss her prom, and award ceremony where she won multiple academic awards. A.F. had to miss out on end of the year activities and in-person learning because she did not feel safe and felt that the threats to her life were credible.

74.     In the wake of A.F.'s harassment and bullying, A.F. retained Counsel who prepared a Notice of Claim relating to potential tort causes of action A.F. may have and want to pursue against MCSD.

75.     A DASA investigation was only commenced by the school after May 10, 2022, when A.F. filed a Notice of Claim.

76.     A.F. returned to in person instruction in September 2022 on the Premises of

Millbrook High School.

77.    A.F. was assigned a "shadow" chaperone to monitor her day at school.

78.    Despite this intervention, Doe continues to call her names and harass her in front of the "shadow" who takes no action to stop this behavior.

79.    Upon information and belief, the "shadow" also fails to document or report A.F.'s continued bullying and harassment which is based upon her sexual orientation.

80.    In response to the filing of the Notice of Claim, MCSD hired an investigation to comply with its Title IX obligations.

81.    In June 2022, A.F. laid bare the years of harassment and bullying she experienced and Defendants Seipp, Mitchell, and Holsborg's knowledge and lack of intervention.

82.    On September 12, 2022, the Title IX investigation determined that Doe had been using inappropriate language, including the word faggot, and determined that credible witnesses attested to this fact.

83.    The Title IX investigator also found that AF remained in fear for her physical safety upon a return to school.

84.    Upon information and belief, no disciplinary action was taken by the Defendants against A.F.'s bully.

   **C.** *Defendants Ignored or Selectively Enforced MCSD's Code of Conduct.*

85.    Despite district-wide policies and alleged protections, A.F. was subjected to behavior and treatment that was not the product of a safe and orderly school. As a result, A.F. was unable to receive quality educational services without disruption or interference.

86.    Each time that A.F. fell victim and recipient of these homophobic comments and physical violence, at least one adult and school personnel was present. Each and every time these

homophobic charged comments and physical threats were logged at A.F., school personnel turned a blind eye to this treatment. Predictably, school officials took no action to de-escalate the mounting harassment and to protect A.F.

87.     Indeed, after A.F. was called a 'faggot' in front of her entire English class, Defendant Holsborg never reported the incident nor was Doe reprimanded in anyway.

88.     After Doe repeatedly violated MCSD policy about entering classrooms where she was not assigned to specifically intimidate A.F., no disciplinary action was ever taken. Despite the school's reassurance to A.F.'s parents that they would keep A.F. safe on an off-premises field trip, and despite adult chaperones witnessing Doe's conduct, no disciplinary action was taken against the student and no chaperone took action to de-escalate the mounting harassment and to protect A.F.

89.     Despite at least five Millbrook High School employees being aware of A.F.'s bullying, no DASA investigation was commenced by the school.

90.     Despite the requirement that DASA be strictly complied with, Defendant Seipp refused to take a report from A.F. or her mother.

91.     After a DASA complaint was accepted on behalf of A.F., no investigator was assigned for months. In fact, an investigation was only commenced after A.F. retained counsel and notified MCSD of her intent to commence litigation.

**D.   *After Reporting Doe's Conduct, A.F. is Retaliated Against***

92.     On or about April 19, 2022, A.F. was in "WIN," a study hall at the school. During this period, one of the Doe's friends was in that class and A.F. did not feel comfortable around them and asked the teacher if she could switch to a different study hall.  This friend had often passed homophobic comments to A.F. and had sat silent when Doe harassed A.F. The teacher advised A.F.

that she could not allow her to switch study periods, despite heterosexual students being allowed to switch all year and it being a common practice at the school. The teacher further advised that she was instructed by Defendant Seipp that she was to refuse any requests made by A.F. This is a clear retaliation by Defendant Seipp and an indication of his inability and unwillingness to protect all students.

93.     On or about April 27, 2022, A.F.'s mother received a phone call from Defendant Mitchell, advising her that would not approve of any change to A.F.'s schedule. She further advised A.F.'s mother that she will "physically remove" A.F. from any class that she was not assigned to attend.

94.     Upon information and belief, superintendents do not typically oversee any students' schedule changes.

95.     Upon information and belief, Defendant Mitchell individual involvement in A.F.'s scheduling issues was not customary at all.

96.     Upon information and belief, Defendant Mitchell's involvement and refusal to make any accommodation for A.F. is because of A.F.'s sexual orientation.

97.     On or about April 5, 2022, April 19, 2022, and May 3, 2022, A.F.'s mother had attended three Board of Education meetings. At the meeting, A.F.'s mother disclosed the treatment she was receiving and specifically disclosed the incident where A.F. was called a "faggot."

98.      It is common practice that the meetings are recorded and posted to the Board of Education's YouTube channel. The meetings with A.F.'s mother were never posted.

99.     Following each Board of Education meeting, A.F. would face retaliation by the administration, by ostracizing her and being re-victimized by the school Principal, Defendant Seipp.

100.    For example, shortly after the meetings, A.F. asked to go get a snack during "home

base" in the morning, which she frequently did prior to the Board of Education meetings. A teacher advised A.F. that she was instructed by Defendant Seipp to no longer allow her to go and get her snack during "home base."

101.    Subsequently, A.F. obtained a 504 Plan, which requires the school to provide a free appropriate public education ("FAPE") to qualified students in their jurisdictions who have a physical or mental impairment that substantially limits one or more major life activities.

102.    A.F. was never granted any of the accommodations, including being able to get a snack and return to class, that her 504 allowed.

103.    A.F. has been intimidated, humiliated, and embarrassed as a result of the above incidents, among others.  As a result, A.F. experienced weight gain, loss of sleep, depression, anxiety about attending school.

104.    A.F. has faced retaliation ever since the Title IX investigation concluded.

105.    The Title IX investigator also determined that A.F.'s bully and her friends had knowledge of the death threats – which the police were investigating – and that one of them was likely behind these calls.

106.    Upon information and belief, the information obtained during the Title IX investigation which related directly to the crime committed against her and her mother was not reported to the police.

107.    Upon information and belief, MCSD and Defendant Seipp received the Title IX investigation's report and conclusions on or about September 12, 2022.

108.    Despite Defendants' failure to initiate a DASA investigation after the first tune any of its agents learned that A.F. was subject to homophobic slurs, false accusations of A.F. being a bully were investigated swiftly.

109.     Indeed, in October 2022, A.F. was accused of allegedly bullying another student, presumably Doe.

110.     Immediately thereafter, A.F. was called into Defendant Seipp's office and told that she had to meet with an investigator and A.F. refused to do so until her mother was present.  Once A.F.'s mother arrived, A.F. was questioned with respect to these alleged incidents.

111.     At that time, A.F.'s mother directed A.F. not to discuss these false allegations and in response, Defendant Seipp threatened to expel A.F. if she did not participate.  A.F. was visibly upset and was crying and shaking.

112.     A.F. refused to participate at the direction of her mother.

113.     On November 7, 2022, A.F. received correspondence from the DASA investigator Lisa Hammel that the complaints against her were unfounded.

114.     Since then, A.F. continually faces retaliation such as being prevented from participating in sports practices, being refused access to the lavatory during classes.  The retaliation has risen to the level of forcing A.F. to stop participating in all after school programs, including sports.

115.     A.F. has also had substitute teachers berate her for "being a snitch" and has been yelled at for filing a report.

116.     Female administrators and faculty have passed comments to A.F.'s mother revealing their disgust and hatred for homosexuals. In sum, A.F. has experienced adults and students screaming and quoting bible verses at her, preaching "God's way", and informing her that when she finally dies, she will not be reunited with her family in heaven because of her sexuality. Predictably, Defendants have taken no action to stop this behavior.

**E.  *A.F. Met All Pre-Suit Requirements***

117.    On May 10, 2022, A.F. served MCSD with her Notice of Claim alleging, inter alia, violations of A.F.'s civil rights and emotional distress.

118.    On August 8, 2022, A.F. sat for a 50-h hearing with the School District's counsel.

119.    As such, A.F. has met all the prerequisites to file the instant lawsuit.

## CLAIMS FOR RELIEF /

### FIRST CAUSE OF ACTION
### FOR VIOLATION OF 42 U.S.C. § 1983 – FAILURE TO TRAIN, INVESTIGATE, AND SUPERVISE
### (Against All Defendants)

120.    A.F. incorporates by reference all preceding paragraphs.

**A.    *The failure of the MCSD Defendants to train its staff and students to recognize and report sexual harassment of students proximately and foreseeably caused AF.'s Injury.***

121.    Defendants MCSD, MCSD Board of Education, Seipp, Mitchell, and Holsborg acting under the color of state law, violated A.F.'s clearly established right to equal access to an education as guaranteed by the Fourteenth Amendment of the United States Constitution.

122.    Defendants' custom and practice of failing to train staff and students as set forth below proximately caused AF's injuries.

123.    Defendants failed to train its staff at Millbrook High School to recognize and report clear indications that AF was being subjected to inappropriate conduct – sexual harassment and bullying – and additional oversight was needed to ensure student protection.

124.    Defendants failed to train its staff and students to recognize and report on sexual harassment and bullying by other students.

125.    The obligation of the Defendants and Mitchell to train its staff and students to recognize and report sexual harassment was made clear by federal and state law and their own policies.

126.    By failing, as a custom and practice, to train both staff and students as to how to recognize and report sexual harassment of students to District authorities, the Defendants acted with deliberate indifference to AF's clearly established right to attend public school and receive an equal access to education as guaranteed by the Fourteenth Amendment of the United States Constitution.

127.    As a direct and proximate result of the Defendants, A.F. suffered damages, including without limitation emotional trauma, mental anguish, suffering, impairment of reputation, and personal humiliation.

128.    The failure of the Defendants to exercise adequate supervision over staff, including Defendants Seipp, and Holsborg, proximately and foreseeably caused the deprivation of AF's clearly established right to access to education.

129.    Defendants' custom and practice of failing to supervise staff, including Defendants Seipp, and Holsborg's interactions with students, notwithstanding notice that such supervision was warranted, proximately caused AF's injuries.

130.    Defendants wholly abnegated their responsibility to exercise appropriate supervision of staff, including Defendants Seipp, and Holsborg in interactions with minor students.

131.    Upon information and belief, the MCSD Board of Education knew of the reports of the sexual harassment and bullying of AF.  The MCSD Board of Education consciously chose not to effectuate an investigation of these reports, not to train MCSD students and staff as to how to recognize and report sexual harassment of a student, and not to require appropriate supervision despite the evident need for such supervision.  These decisions represent the official policy of the District and demonstrate the MCSD Board of Education's willful indifference to AF's clearly established right to education.

132.    Despite indications that supervision was required, MCSD failed to respond with the

oversight required by common sense and minimal concern for the welfare of their students, and in particular AF.

133.    The reports received by Defendants MCSD, MCSD Board of Education, Mitchell that Defendants Seipp, and Holsborg were aware of A.F.'s ongoing harassment did not engender appropriate supervision of Seipp or Holsborg.

134.    Defendants MCSD, MCSD Board of Education, and Mitchell were all policymakers with respect to the duty to undertake or direct appropriate supervision of staff and students.

135.    Defendants MCSD, MCSD Board of Education, Mitchell's inadequate supervision of Defendants in interactions with Millbrook High School students, and with AF, constitutes deliberate indifference to AF.'s right to equal access to education as a student at Millbrook High School and as guaranteed by the Fourteenth Amendment of the United States Constitution.

**B.    *Defendants' Failure to Appropriately Investigate Allegations of Sexual Harassment and Bullying of AF foreseeably led to AF's injury.***

136.    A.F. incorporates by reference all preceding paragraphs.

137.    All the Defendants, acting under color of state law, violated AF's right to equal access to education as guaranteed by the Fourteenth Amendment to the United States Constitution by failing to investigate reports that AF was being harassed.

138.    A.F. was sexually harassed and bullied on multiple occasions in front of Defendant Holsborg and others. Each and every time, Holsborg stood idly by and tacitly approved this behavior.

139.    Had any of these reports been competently investigated, AF's abuse would have been discovered and stopped AF's injuries would not have occurred.

140.    Instead, all the Defendants, with willful indifference to the rights of its students to attend public school free of sexual harassment and bullying, failed to properly investigate the claims

of sexual harassment and bullying.

141.    Thus, Defendants utterly failed to investigate claims of sexual harassment, bullying and abuse that AF suffered, in violation of her right to equal access to education as guaranteed by the Fourteenth Amendment to the United States Constitution.

142.    As a direct and proximate result of the Defendants' actions and inactions, A.F. suffered damages, including without limitation emotional trauma, mental anguish, suffering, impairment of reputation, and personal humiliation.

**SECOND CAUSE OF ACTION**
**FOR VIOLATION OF 42 U.S.C. § 1983 – EQUAL PROTECTION OF THE LAW**
**(Against Defendants MCSD, MCSD Board of Education, and Mitchell)**

143.    A.F. incorporates by reference all preceding paragraphs.

144.    Defendants violated A.F.'s rights under 42 U.S.C. § 1983 by denying her equal protection under the law, as guaranteed by the 1st and 14th Amendments to the United States Constitution.

145.    A.F.'s 1st Amendment claims arise from the retaliation she suffered because of speaking out about the sexual harassment to which she was subjected and seeking relief from the harassment by beginning the process to litigate her claims.

146.    The 14th Amendment to the U.S. Constitution states:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

147.    A.F. was denied equal protection of the law in violation of the 14th Amendment by virtue of policies, practices, and customs of MCSD, and as result of the policies established or countenanced by MCSD and its officials, including Defendants, Mitchell.

148.    Defendants MCSD, MCSD Board of Education, and Mitchell acting under color of

state law, treated A.F., a homosexual student, differently than her heterosexual or perceived-to-be-heterosexual student peers.

149.   A.F. was subjected to punishment under MCSD's Code of Conduct in an unduly harsh manner because of her sexual orientation.  A.F. was subject to sexual harassment and bullying and was punished both when considered a victim of bullying under MCSD's own policies and when falsely considered an aggressor.

150.   A.F.'s bullies – who are heterosexual or perceived-to-be-heterosexual students – were not punished with the same level of severity as A.F., or even at all.

151.   Defendants MCSD, MCSD Board of Education, and Mitchell selectively enforced district rules and regulations to A.F.'s detriment because it would not enforce rules where homosexual students were the target of misconduct if the nature of the conduct was sexual harassment or the creation of a hostile education environment by heterosexual students. This indifference to the harassment suffered by homosexual students at the hands of heterosexual students has become so enshrined as to constitute a custom or practice of MCSD.

152.   A.F. was injured because of Defendants MCSD, MCSD Board of Education, and Mitchell's perpetuation of a policy or custom of allowing heterosexual students to engage in inappropriate, sexually offensive behavior by virtue of the fact that their victims were homosexual.

153.   Defendants MCSD, MCSD Board of Education, and Mitchell's failure to take affirmative and effective steps to stop heterosexual students from sexually harassing homosexual students resulted in an unequal application of the law and violated A.F.'s rights under the 14th Amendment.

154.   Many instances of offensive conduct occurred in front of faculty members or were disclosed to faculty members. Defendants MCSD, MCSD Board of Education, and Mitchell failed

to train faculty in methods to stem sexual humiliation of homosexual students by heterosexual students.  Consequently, there was a policy, practice or custom to allow heterosexual students to engage in unconscionable conduct directed at homosexual students without sanction.

155.    Failure to train the faculty and administrators on the methods of handling sexual harassment, which violates a student's right to equal protection of the law as guaranteed by the 14th Amendment, constitutes deliberate indifference to the rights of such students.

156.    As detailed above, Defendants MCSD, MCSD Board of Education, and Mitchell deliberately failed to punish heterosexual students for their misconduct.  This conduct violated the rights guaranteed to A.F. by the 14th Amendment to the United States Constitution.  As Defendants MCSD, MCSD Board of Education, and Mitchell acted under color of state law, its conduct violated 42 U.S.C. § 1983 and A.F. requests that this Court award her compensatory damages she sustained because of the illegal conduct of the Defendants, as well as reasonable counsel fees and such other relief as is just and appropriate.

**THIRD CAUSE OF ACTION**
**<u>FOR VIOLATION OF AF'S RIGHTS UNDER TITLE IX – DISCRIMINATION</u>**
(Against Defendants MCSD and MCSD Board of Education, and Mitchell)

157.    A.F. incorporates by reference all preceding paragraphs.

158.    Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681, states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

159.    The MCSD is a recipient of federal funding under Title IX and must comply with Title IX.

160.    As alleged herein, A.F. faced an intense and prolonged period of sexual harassment

and sex-based bullying while enrolled at Millbrook High School.

161.   The sexual harassment was pervasive and permeated every aspect of A.F.'s life.

162.   Defendants MCSD, MCSD Board of Education, and Mitchell were aware of the sexual harassment and bullying.  Faculty and staff members were present in the hallways, stairways, and classrooms when and where the incidents occurred and turned a blind eye to the behavior. Moreover, A.F. and others reported this sexual harassment and bullying.

163.   Defendants MCSD, MCSD Board of Education, and Mitchell failed to monitor A.F.'s situation or follow up with her. Instead, A.F. continued to be a victim of bullying and harassment and was then subjected to discipline when her tormentors were not.

164.   Despite Defendants MCSD, MCSD Board of Education, and Mitchell's knowledge of A.F.'s treatment, Defendants failed to take any effective action necessary to address the sexual harassment and bullying. The student harassers were not adequately disciplined or otherwise prohibited from engaging in future inappropriate sexually charged behavior. Accordingly, those students became emboldened, their harassment intensified, and the administration – which never had control over the students but should have – did nothing to restore order.

165.   Upon information and belief, Defendants MCSD, MCSD Board of Education, and Mitchell's failure to adequately address A.F.'s treatment resulted from the Defendants' failure to adequately train its faculty and staff on how to identify and stop bullying and student-on-student sexual harassment.  Defendants' repeated failure to enforce its own anti-bullying and sexual harassment policies – and the clear absence of even a rudimentary understanding of how hurtful and damaging sexual harassment can be to the victim – demonstrates Defendants' deliberate indifference to its obligations.

166.   A.F. was penalized and secluded from her classmates while her harassers continued

to freely roam the hallways and enjoy the fruits of the educational system.

167.    Defendants MCSD, MCSD Board of Education, and Mitchell were also deliberately indifferent to their obligation to provide counseling or other services to A.F. to help her cope with, and address the effects of, being sexually harassed and bullied.

168.    Defendants MCSD, MCSD Board of Education, and Mitchell were thus deliberately indifferent to A.F.'s plight and left her on her own to deal with her harassers and the intolerable and unsafe environment that Defendants effectively created for her.    Defendants violated the requirements of Title IX and caused A.F. to suffer damages, including without limitation emotional trauma, mental anguish, suffering, impairment of reputation, and personal humiliation.

**FOURTH CAUSE OF ACTION**
**FOR VIOLATION OF AF'S RIGHTS UNDER TITLE IX – RETALIATION**
(Against Defendants MCSD and MCSD Board of Education, and Mitchell)

169.    A.F. incorporates by reference all preceding paragraphs.

170.    Defendants MCSD, MCSD Board of Education, and Mitchell collectively agreed to suspend A.F. despite MCSD's determination that A.F. was bullied and sexually harassed.

171.    Upon A.F.'s return to the Millbrook High School campus, Defendants MCSD, MCSD Board of Education, and Mitchell failed to have a safety plan in place to protect A.F.

172.    Once students learned of A.F.'s reports and Defendants' unwillingness to do anything to arrest the conduct, the students increased their harassment to retaliate against A.F. Defendants MCSD, MCSD Board of Education, and Mitchell were deliberately indifferent to this retaliatory conduct and took no action to stem its occurrence.

173.    Defendants MCSD, MCSD Board of Education, and Mitchell's inaction and failure to provide protection to A.F. after her reports of sexual harassment and bullying became known, and their half-hearted efforts to curtail the harassment, promoted an atmosphere of retaliation

against A.F. for her disclosure.

174.    In addition to subjecting A.F. to an unsafe environment – as evidenced by the Defendants' lack of a real or effective safety plan – once Defendants MCSD, MCSD Board of Education, and Mitchell became aware of A.F.'s intent to sue the District, Defendants actively sought to punish A.F. instead of protecting her.

175.    Retaliation for engaging in activities protected by Title IX is actionable. The retaliation caused AFs to suffer damages, including without limitation emotional trauma, mental anguish, suffering, impairment of reputation, and personal humiliation.

**FIFTH CAUSE OF ACTION**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**(Against All Defendants)**

176.    A.F. incorporates by reference all preceding paragraphs.

177.    Defendants owed a duty of care to A.F.

178.    Defendants knew that A.F. engaged in protected activity by reporting her bullying and harassment based on her sexual orientation while she was on the premises of MCSD property.

179.    Despite their obligations under federal and New York state law and MCSD Policy, Defendants failed to take prompt action to provide protective measures for AF which unreasonably endangered her physical safety and caused her to fear for her own safety.

180.    Due to Defendants' negligence, AF was forced to continue to attend classes in the same building as her bully and lived in daily fear of encountering her every day.

181.    Defendant's actions were extreme and outrageous.

182.    AF suffered severe emotional harm because of the Defendants' breach of their duties.

**SIXTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against All Defendants)**

183.    A.F. incorporates by reference all preceding paragraphs.

184.    Defendants MCSD, MCSD Board of Education, and Mitchell collectively agreed to suspend A.F. despite MCSD's determination that A.F. was bullied and sexually harassed.

185.    Upon A.F.'s return to the Millbrook High School campus, Defendants MCSD, MCSD Board of Education, and Mitchell failed to have a safety plan in place to protect A.F.

186.    Once students learned of A.F.'s reports and Defendants' unwillingness to do anything to arrest the conduct, the students increased their harassment to retaliate against A.F. Defendants MCSD, MCSD Board of Education, and Mitchell were deliberately indifferent to this retaliatory conduct and took no action to stem its occurrence.

187.    Defendants MCSD, MCSD Board of Education, and Mitchell's inaction and failure to provide protection to A.F. after her reports of sexual harassment and bullying became known, and their half-hearted efforts to curtail the harassment, actually promoted an atmosphere of retaliation against A.F. for her disclosure.

188.    In addition, A.F. has experienced multiple signs of emotional distress because of her treatment by Defendants.

189.    Defendants' knowing and intentional retaliation against A.F. has foreseeably and proximately caused A.F. emotional distress.

190.    Defendants' intentional actions were committed with the knowledge that they would cause severe emotional distress to A.F.

191.    Defendants' actions were willful, malicious, deliberate, and were done with reckless or negligent indifference to the likelihood that such behavior would cause severe emotional distress

and with utter disregard for the consequences of such actions.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

192.    A.F. incorporates by reference all preceding paragraphs.

193.    Defendants Holsborg, Mitchell, and Seipp were aware of the sexual harassment and bullying A.F. was experiencing as they either witnessed A.F.'s treatment by other students or it was reported to them.

194.    Defendants Holsborg, Mitchell, and Seipp's multiple failures to take any action to stem the sexually charged abuse of A.F. by her peers resulted in continued sexual harassment and bullying of A.F., which formed the basis for A.F.'s emotional injuries.

195.    Defendants MCSD, MILLBROOK CENTRAL SCHOOL DISTRICT BOARD OF EDUCATION, and Mitchell, through their agents, servants, and employees, acted with a lack of cautious regard for A.F.'s right to be free from unnecessary bodily harm or from the threat of such harm and without the due care that prudent school officials would use under the circumstances.

196.    The injury to A.F. was a direct and proximate result of the negligence of all Defendants.

197.    As a result of Defendants' negligence, A.F. suffered emotional pain and suffering.

**SEVENTH CLAIM FOR RELIEF:**
**RESPONDEAT SUPERIOR**
(Against MCSD)

198.    A.F. incorporates by reference all preceding paragraphs.

199.    The individual Defendants Mitchell, Seipp and Holsborg were agents, employees, representatives, and servants of the non-individual Defendant MCSD.

200.    As a result, the non-individual defendant, MCSD, is responsible for the improper

actions and conduct of its agents, employees, representatives, members, visitors, and servants, who are individual defendants, under the doctrine of vicarious liability.

## **PRAYER FOR RELIEF**

**WHEREFORE,** A.F. respectfully requests that this Court grant the following relief: Compensatory damages, punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: May 5, 2023                    Respectfully submitted,

**HACH ROSE SCHIRRIPA & CHEVERIE LLP**

By:*/s/ Hillary Nappi*
Hillary M. Nappi
Kathryn A. Hettler
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311
Facsimile: (212) 779-0028
Email: *hnappi@hrsclaw.com*
      kh@hrsclaw.com

*Attorneys for Plaintiff*